LEWIS (JENKS v.). See Cases Nos. 7,279 and 7,280.

## Case No. 8,325.

### LEWIS v. KINNEY.

[5 Dill. 159; 25 Int. Rev. Rec. 138; 7 Reporter, 551; 11 Chi. Leg. News, 223; 26 Pittsb. Leg. J. 191.] [1]

Circuit Court, E. D. Missouri. March Term, 1879.

PART OWNERS OF STEAMBOATS—COMPULSORY SALE AS A MEANS OF PARTITION—STIPULATION TO RETURN.

1. In case of a dispute between part owners of a steamboat as to her employment, a court of admiralty will not decree a sale of the whole boat at the instance of the minority interest.

2. Nature of the stipulation which the majority interest, wishing to employ the boat, may be required to give for the protection of the minority interest, discussed.

[Appeal from the district court of the United States for the Eastern district of Missouri.]

The libellant, William J. Lewis, on the 27th day of June, 1878, filed his libel in the district court of the United States for this district against the steamboat R. W. Dugan, her engines, etc., and Joseph B. Kinney, part owner etc., in which he alleged the following facts: That about the 17th day of March, 1876, he, said libellant, purchased from said Kinney, the then sole owner, a third part of said steamboat, and that from said date of purchase until about November of the same year, by agreement of himself and co-owner, she was run in the "Missouri river trade," between St. Louis and Portland, Missouri; that about the last-named date said Kinney, in opposition to the expressed wishes of libellant, took the steamboat to New Orleans, Louisiana, and ran her, at a loss, in the "New Orleans and Red river trade," and afterwards took her to New Orleans, and, being in good condition, instead of loading her with a profitable cargo, caused her to be towed to St. Louis by the Kate Kinney—another steamboat belonging to said Kinney

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 26 Pittsb. Leg. J. 191, and 7 Reporter, 551, contain only partial reports.]

—at an expense to the owners of the R. W. Dugan of $600; that upon the arrival of the vessel at St. Louis, libellant objected to the course taken by his said co-owner, and requested that an account of the "boat's business" be rendered to him, which said Kinney failed and refused to do; that about April 1st, 1877, said Kinney, despite the repeated objections of libellant, took the steamboat R. W. Dugan to the Yellowstone river, and for more than a year used her as a tender for said steamer Kate Kinney in fulfilling a contract for the transporation of goods entered into by him individually with the government of the United States, and upon his return to St. Louis, in May, 1878, although requested, failed and refused to render any account to libellant of the business or earnings of the boat; that said Kinney, against the wishes and consent of libellant, has incurred large expenses for unnecessary repairs to the vessel, and refuses to permit libellant to have any voice in the use and management of the same. Libellant further alleges that he has repeatedly offered to sell his interest in the steamboat to said Kinney at a reasonable price, or to purchase his share on like terms, or to run the vessel in a trade and under a master to be agreed upon, all of which offers said Kinney has declined. In view of these facts, and of the disputes between himself and co-owner being irreconcilable, he prays for a decree for the sale of the steamboat and proper distribution of the proceeds. The said Kinney appeared as claimant of two-thirds part of the steamboat R. W. Dugan, and filed a "plea to the jurisdiction" of the court in the nature of a demurrer, on the general ground that no case is stated in the libel entitling the libellant to a decree for the sale of the vessel, and on the special ground that the owner of a minority interest is not entitled to such decree. The district court sustained the plea and dismissed the libel. Against this decree the libellant appeals and seeks to have the same reversed.

Given Campbell, for appellant.
William H. H. Russell, for appellee.

DILLON, Circuit Judge. The libellant is the owner of one-third, the claimant of two-thirds, of the steamboat. The object of the libel is to obtain a decree for the sale of the boat and a division of the proceeds. The district court decided that the case stated in the libel did not entitle the libellant to a decree for a sale. The libellant is doubtless entitled, on an application for that purpose, to require a stipulation from the respondent, if the latter insists on employing the vessel in voyages or upon ventures against the judgment and remonstrance of the libellant, to return the vessel, or in default to pay the value of the libellant's interest therein. As the respondent is the owner of the larger interest, he has, according to the settled doc-

trine on the subject, the preferable right to the use of the vessel, on giving, if required by the libellant, the proper stipulation. If the respondent refuses or declines to employ the boat, the libellant, although the owner of the lesser interest, on giving such a stipulation, would be entitled to the possession of the vessel for the purpose of employing her. This much is clearly stated in the opinion of the supreme court in The Orleans v. Phoebus, 11 Pet. [36 U. S.] 175. As I understand that case, it also settles, so far as this court is concerned, the question as to the libellant's right, on the facts stated in the libel, to a decree for a sale. In that case the owner of a one-sixth part in a steamboat asked the admiralty to decree a sale against the owners of the other five-sixths parts, alleging, to support his claim, that, as master and part owner, he had been dispossessed by the co-owners, who were navigating the boat contrary to his wishes; that they refused to have an amicable sale of the boat, and that, likewise against his wishes, they were about to send the boat on another trip up the Mississippi river. The question was made that the district court had no jurisdiction as a court of admiralty to entertain the libel. Mr. Justice STORY, delivering the judgment of the court, disposed of this point in the following sentence: "The jurisdiction of courts of admiralty, in cases of part owners having unequal interests and shares, is not and never has been applied to direct a sale upon any dispute between them as to the trade and navigation of a ship engaged in maritime voyages, properly so called." It seems to have been assumed that no more favorable rule applied to steamboats, for he adds: "If, therefore, this was a vessel engaged in maritime navigation, the libel for a sale could not be maintained."

The statement in the present libel that the respondent is using the boat in voyages and in trades against the wish of the libellant, is identical with that made in the case before the supreme court. The respondent as part owner has the legal right to use the vessel, subject to giving a stipulation, if required. The fraudulent expenses incurred by the respondent would not be binding on the libellant. If the respondent is under a liability to account to the libellant in respect to the use or operation of said boat, the proper court will compel him to do so. As I cannot but regard the judgment of the supreme court in the case cited as conclusive in the present libel, I do not deem it necessary to go into the learning applicable to the question presented. It will be found summarized in Story, Partn. §§ 415–439; T. Pars. Partn. 558–563; Smith, Merc. Law, 184–187; Abb. Shipp. pt. 1, c. 3, p. 98 et seq.; Freem. Coten. §§ 389–392. The general doctrine of the maritime law, as well as the decisions in Great Britain and in this country, are stated in Tunno v. The Betsina [Case No. 14.236], which also holds that the owner of a minori-

ty interest has no right to a decree for a sale of the vessel against the wishes of the majority.

It would be extremely difficult to formulate rules for the adjustment of the relations of part owners of a vessel when discord arises between them, which would always be just in their operation. The majority may oppressively and unjustly use their conceded preferable right to employ the vessel. The minority owner may be cross-grained and unreasonable. Public policy requires that the vessel shall be employed and not suffered to lie idle, if any of the owners will use her. Neither the major nor minor interest should be armed with a club to hold in terrorem over the other. To allow the owner of a small fraction of the vessel to demand a sale as of right, would give him an undue advantage. To allow the majority to force a sale of his interest at pleasure, would put him too much in their power. The unreasonable refusal of the minor share-owner to unite with the majority interests in employing the vessel may be a hardship upon them by requiring more than their share of capital for equipment and outfit.

The consideration does not, however, have the same force with respect to western steamboats as in the case of sea-going vessels. The majority, because of their preferable right to the use of the vessel, and their right to prevent a sale, and, also, to use the vessel without compensation, if such right exists, have an inducement to act unfairly towards the minority. The only relief to the latter, if unfairly dealt by, would be to have a sale of the vessel or to get some more beneficial stipulation than a mere engagement to return the vessel. But a right to a sale at all is denied by the English courts. Equity has refused to decree a sale of a vessel, as it may do between part owners in respect to other indivisible chattels, but turned the parties over to the admiralty; and it is denied that the admiralty courts in England can ever decree a sale. In this country the practice is not to decree a sale except where the dispute is between the owners of equal shares, and there is, therefore, no other possible way of terminating it.

These considerations show the necessity for, as well as the difficulty of, settling the disputes which arise among part owners. What tribunal would be so competent to do this on broad and equitable principles as the admiralty courts, if they could exercise the comprehensive and flexible powers which are acknowledged to belong to the court of equity, and which ought equally to pertain to the admiralty?

I cannot say, therefore, that I am quite satisfied with the uncertain or limited protection which the English and American cases give to the minority interest, especially if the doctrines there maintained are applied without modification to steamboats on our western rivers. If, in case of irreconcilable

hostility between part owners, the only right of the owner of the minority interest under any circumstances is to require a stipulation simply for a return of the steamboat, he is almost wholly in the power of the majority.

The average life of a western steamer is very short, probably not exceeding eight or ten years, and if the majority interest, having the preferable right to all of the boat, can prevent a compulsory sale under any circumstances, and can also use the boat as long as it wishes by simply giving a stipulation for its safe return, this course may be pursued until the boat is worn out. The subject is full of difficulties, as Lord Tenterden and others have pointed out (Abb. Shipp. 98; The Margaret, 2 Hagg. Adm. 275, per Sir Christopher Robinson; The Marengo [Case No. 9,065], per Lowell, J.); but many cases may easily be supposed, and doubtless are constantly arising, in which it would be more equitable to the minority, and neither unjust to the majority nor incompatible with the interests of commerce and the policy of the law which favors the employment of the vessel, if the court, in its discretion, guided by the circumstances of the particular case, could, instead of the usual stipulation for a return of the boat, require a stipulation for an ascertained reasonable compensation for the value of the use of the minority interest, the owner of the latter interest in such case to be his own insurer. The power of the court to require such a stipulation is doubtful (The Apollo, 1 Hagg. Adm. 306, 312; The Marengo, supra), and I do not decide it or even intimate an opinion upon it; but that such a power ought to exist in respect of boats navigating our western rivers, however it may be in respect of sea-going vessels, would seem to be easy of demonstration. The libel, as acted on by the district court, presented only the question as to the right of the libellant, upon the facts therein stated, to a decree for a sale, and, for the reasons above given, my judgment is that its decree dismissing the libel was right, and the same is accordingly affirmed. Affirmed.